UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| BOBBY STONE, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:24-cv-00812 |
| ASSOCIATED WHOLESALE GROCERS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 23) recommending that the Court deny Defendant Associated Wholesale Grocers, Inc.'s ("AWG") Motion for Summary Judgment seeking dismissal of Plaintiff Bobby Stone's ("Stone") claims (Doc. No. 16). AWG has filed objections to the R&R, to which Stone has not responded. (Doc. No. 34). For the following reasons, AWG's objections will be sustained in part and overruled as moot in part; AWG's Motion for Summary Judgment will be granted; and the R&R will not be adopted.

**I.     BACKGROUND[1]**

Stone initiated this Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304, et seq. ("TPPA") action against AWG on May 24, 2024, alleging that AWG terminated him in retaliation for him making complaints about its safety violations to the Tennessee Occupational Safety and Health Administration ("TOSHA"). (See Doc. No. 1-1). It is on this claim that AWG seeks summary judgment in its favor. (Doc. No. 16).

---

[1] The R&R provides ample factual and procedural background on the pending motions. (See Doc. No. 23 at 2–5). Accordingly, the Court will only detail the issues relevant to resolution of the AWG's objections.

In short, the undisputed facts are as follows:[2] AWG is a grocery wholesaler with warehouses throughout the country. (Doc. No. 19-1 ¶ 2). Stone worked in AWG's Nashville warehouse in various positions: as a selector, and most recently, as a forklift driver who moved product from reserve shelving for shipping. (Doc. No. 20-1 at 57:17–58:2, 61:6–8; Doc. No. 19-1 ¶ 16). Throughout Stone's employment as a forklift operator, he made reports to AWG about perceived problems with his forklift. (Doc. No. 19-1 ¶ 20; Doc. No. 19-2 ¶ 5). The parties dispute whether Stone attempted to perform maintenance on the forklifts himself to remedy his concerns. (Doc. No. 19-1 ¶ 25; Doc. No. 19-2 ¶ 7; Doc. No. 22). AWG warned him that this was against its policies and procedures, and issued a final warning to him to stop such activity in February 2023. (Doc. No. 18 ¶ 1; Doc. No. 19-1 ¶ 24 (Nashville Warehouse Manager Lloyd Faircloth ("Faircloth") stating in his declaration that in February 2023, Stone "received a final warning for tampering with the mechanical component of a forklift in violation of AWG safety policies and procedures")). Nevertheless, AWG issued yet another warning to Stone in June 2023 for "changing a forklift battery with a remaining charge of 35% contrary," which AWG asserted was against its policy of "waiting to do so until there was a remaining charge of 20%[.]" (Doc. No. 18 ¶ 2; see Doc. No. 19-1 ¶ 28 (Faircloth stating the same)).

Meanwhile, throughout 2022 and 2023, Stone made various complaints to TOSHA about safety and health hazards at AWG. (Doc. No. 20-1). TOSHA correspondence acknowledged Stone's complaints, and informed him that it "notified [an] [AWG] representative requesting that

---

[2] The undisputed facts in this section are drawn from the undisputed portions of Stone's responses to AWG's statement of facts (Doc. No. 21), the exhibits and depositions submitted in connection with the summary judgment briefing, and portions of the Complaint (Doc. No. 1-1) that are not contradicted by the evidence in the record. To the extent that a party failed to dispute a proposed statement of undisputed material fact with a proper citation to the record, the Court considers that fact undisputed. See Fed. R. Civ. P. 56(c); see also M.D. Tenn. L.R. 56.01(e).

the appropriate action be taken to correct" his complaints. (Doc. No. 20-1 at 157–59). The TOSHA communications also confirmed that it had "not revealed [Stone's] identity to [AWG]." (Id.).

Issues with AWG and Stone came to a head in July 2023. Then, Stone reported a spill on the warehouse floor to his supervisor. (Doc. Nos. 19-1, 20-1). Despite his supervisor calling someone to clean up the spill, the area where Stone worked remained slippery an hour later. (Doc. No. 20-1). Stone then pressed the emergency "E-Stop" button to disable an automatic door in the warehouse that separated refrigerated and non-refrigerated items (Doc. No. 19-1 ¶¶ 31–34; Doc. No. 20-1 at 100:9–16), and kept it open "for a couple hours for the floor to dry up[.]" (Doc. No. 20-1 at 100:18–20). The parties dispute both (1) whether Stone was given permission by a superior to open the automatic door (see, e.g., Doc. No. 20-1 at 249:21–22); and (2) whether Stone closed the automatic door before he left AWG that day. (Doc. No. 19-2 ¶ 22 (Kendell Roberts ("Roberts"), who supervised Stone's equipment, stating in his declaration that he observed the automatic door was open at 6:00 A.M. the day after the spill); but see Doc. No. 20-1 at 100:18–23 (Stone testifying that he closed the automatic door before he left work)).

Days later, AWG terminated Stone's employment. (Doc. No. 19-1 ¶ 35). The parties present two competing stories on Stone's termination. On the one hand, AWG says it informed Stone that it was terminating his employment due to (1) his actions on the date of the spill, *i.e.*, leaving the automatic door open in the warehouse, and (2) the two prior warnings AWG issued to Stone about his unauthorized maintenance of the forklift. (Doc. No. 19-1 ¶¶ 35–36). According to AWG, it did not know Stone made complaints to TOSHA at the time of his termination. (Id. ¶ 38 (Faircloth stating "[a]t no time during [Stone's] employment did TOSHA indicate the complainant of any complaints submitted regarding AWG.")). On the other hand, Stone contends

3

that he was terminated after showing his manager an email response Stone received from TOSHA, as well as because of his race and age. (See, e.g., Doc. No. 21 ¶¶ 5, 7).

After considering these undisputed facts and the other evidence in the record, the Magistrate Judge issued the November 5, 2025 R&R. (Doc. No. 23). In the R&R, the Magistrate Judge recommends denying AWG's Motion for Summary Judgment (Doc. No. 16) because genuine disputes of material fact exist on Stone's TPPA retaliation claim. (See Doc. No. 23 at 13).

## II. STANDARD OF REVIEW

AWG raises various objections to the R&R. Before addressing AWG's objections to the R&R, it is worth emphasizing that the Federal Rules of Civil Procedure and this Court's Local Rules provide that only "specific written objections" to the magistrate judge's proposed factual findings and legal conclusions are considered "proper" for the district court's consideration. Fed. R. Civ. P. 72(b)(2). Proper objections also "must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made . . . to apprise the District Judge of the bases for the objections." M.D. Tenn. L.R. 72.02(a). "The district judge must determine de novo any part of the magistrate judge's disposition [on a dispositive motion] that has been *properly* objected to." Fed. R. Civ. P. 72(b)(3) (emphasis added). In doing so, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.; see also 28 U.S.C. § 636(b)(1)(C).

The rules distinguish between proper objections that deserve de novo review, and "vague, general, or conclusory objections," which do "not meet the requirement of specific objections and [are] tantamount to a complete failure to object." Cole v. Yukins, 7 F. App'x 354, 356 (6th Cir. 2001) (citing Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995)). Indeed, "an 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply

4

summarizes what has been presented before, is not an 'objection' as that term is used in this context." VanDriver v. Martin, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004) (citations and quotations omitted). Further, arguments raised for the first time to the district court on objection are not normally properly before the district court for consideration, as arguments are usually waived when not first presented to the magistrate judge. See Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (party procedurally barred from raising claim not raised before the magistrate judge); The Glidden Co. v. Kinsella, 386 F. App'x. 535, 544 (6th Cir. 2010) (declining to review an issue that the district judge did not consider because it was not presented to the magistrate judge).

Whether objections are properly raised is of great import, as an improper objection amounts to a "failure to properly, specifically, and timely object to a report and recommendation," which "releases the Court from its duty to independently review the matter." Lawhorn v. Buy Buy Baby, Inc., 2021 WL 1063075, at *1 (M.D. Tenn. Mar. 19, 2021). When a litigant makes improper objections, "[t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate [judge] useless." Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991). Under these circumstances, "[t]he functions of the district court are effectively duplicated as both the magistrate [judge] and the district court perform identical tasks," and "[t]his duplication of time and effort wastes judicial resources rather than sav[es] them, and runs contrary to the purposes of the Magistrates Act." Id. With these standards in mind, the Court now turns to whether AWG's objections are proper or meritorious.

### III. DISCUSSION

AWG contends the Magistrate Judge erred in denying its motion for summary judgment in three ways: (1) by failing to consider that Stone did not comply with Local Rule 56.01 in his responses to AWG's statement of undisputed facts; (2) failing to find that Stone cannot show that

5

Case 3:24-cv-00812   Document 44   Filed 12/10/25   Page 5 of 13 PageID #: 611

retaliation was the *sole* cause for his termination, given AWG's other undisputed reasons for his termination; and (3) failing to fully analyze whether Stone reported any "illegal activity" to TOSHA that could support his TPPA claim.  (See generally Doc. No. 34).  The Court will only address AWG's second objection, as it controls.

A. Legal Standard

AWG's second objection to the R&R's analysis is proper, because it is specific and includes citations to the record that alerts the Court on what AWG contends is the legal error in the R&R.  M.D. Tenn. L.R. 72.02(a) (a valid objection must "state with particularity the specific portions of the Magistrate Judge's report . . . and must be accompanied by sufficient documentation").  Accordingly, the Court reviews the second objection de novo.  Fed. R. Civ. P. 72(b)(3).  In doing so, it applies the same summary judgment standard that the Magistrate Judge did in the R&R.  (Doc. No. 23 at 5–6).

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted).  "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (citation and quotations omitted). "In response, the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt

6

as to the material facts.'" Miller v. Maddox, 866 F.3d 386, 389 (6th Cir. 2017) (quoting Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993)).

In deciding a motion for summary judgment, the Court must review all the evidence and inferences from the evidence in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. See Anderson, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. See Rodgers, 344 F.3d at 595.

B. Analysis

The Court turns to AWG's second objection seeking dismissal of Stone's TPPA claim, (see Doc. No. 34 at 3–8), which alleges that AWG violated the TPPA by terminating Stone's employment because he made a complaint about AWG's safety and health practices to TOSHA. (Doc. No. 1-1). As the Magistrate Judge explained in the R&R (see Doc. No. 23 at 8), this claim is subject to the McDonnell Douglas burden shifting analysis.[3] McDonnell Douglas v. Green, 411 U.S. 792 (1973); see Tenn. Code Ann. § 50-1-304(f).

---

[3] Among other grounds, the Magistrate Judge rejects AWG's motion because it does not specifically articulate this framework in arguing that summary judgment is warranted in its favor. (Doc. No. 23 at 9). While this is technically true (see generally Doc. No. 17), AWG does address each step of the McDonnell Douglas test in its summary judgment motion, if not with the specificity the Magistrate Judge and this Court would prefer. (See id. (discussing the elements of Stone's *prima facie* case, Stone's legitimate reason for terminating Stone's employment, and pretext)). Given AWG's substantive discussion of the McDonnell Douglas factors, if not in form, the Court will not deny AWG's motion for lack of a more fulsomely analysis.

7

To satisfy the first step of the McDonnell Douglas burden shifting framework, Stone must show the following to establish a *prima facie* case of retaliation: "(1) his status as an employee of the defendant; (2) [his] refusal to participate in, or remain silent about, illegal activities; (3) his termination; and (4) an exclusive causal relationship between the refusal to participate in, or remain silent about, illegal activities and his termination." Amos v. McNairy Cnty., 622 F. App'x 529, 536 (6th Cir. 2015). As the Tennessee Supreme Court has instructed, to satisfy the fourth element of his *prima facie* case, Stone must also "demonstrate that his whistleblowing behavior was the *sole* reason for his termination." Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 537 (Tenn. 2002). AWG's objection challenges Stone's ability to establish that fourth element.[4] (See Doc. No. 34 at 3–8).

In the R&R, the Magistrate Judge recommends that the Court find a genuine dispute of material fact on this issue, given that there is evidence in the record calling into question whether AWG's purported reason for terminating Stone—his AWG policy and procedure violations—was legitimate. (Doc. No. 23 at 12 (citing Doc. Nos. 19-1, 19-2, 20-1)). AWG objects to this analysis, reasoning that it has put forth various, undisputed reasons for Stone's termination, including AWG's reasonable belief that Stone left the automatic door open without permission to do so, Stone's prior violations of AWG policies, and Stone's own assertion that he was discharged because of his race and age. (Doc. No. 34 at 6). According to AWG, because Stone does not present any evidence to counter its reasons, he cannot satisfy the stringent sole causation standard that the TPPA requires.

---

[4] Given that the AWG's second objection on the fourth *prima facie* element of Stone's TPPA claim is controlling, the Court need not grapple with the rest of the McDonnell Douglas factors relevant to Stone's claim to conclude that summary judgment is warranted in AWG's favor.

Upon review of the record and the legal authority, the Court finds AWG's objection meritorious. As a threshold matter, AWG is correct that the sole causation standard imposed by the TPPA is a heavy threshold to cross. Indeed, as the Sixth Circuit has explained, "[t]he word 'solely' does much of the heavy lifting" in TPPA claims, as it "'increases the burden of proof to require the plaintiff to demonstrate that his whistleblowing behavior was the *sole* reason for his termination, in contrast with the 'substantial factor' requirement of the common law.'" Sourinho v. Rich Prods. Corp., 2021 WL 4735844, at *3 (6th Cir. Oct. 12, 2021) (quoting Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 537 (Tenn. 2002)). This higher standard imposed by the TPPA means that "there must be 'an *exclusive* causal relationship between the refusal to participate in, or remain silent about, illegal activities and [the employee's] termination.'" Id. (quoting Amos v. McNairy Cnty., 622 F. App'x 529, 536 (6th Cir. 2015)) (emphasis added).

Even assuming that Stone has complained about an alleged illegal activity by AWG—an assumption that in and of itself is problematic[5]—the sole causation standard imposed by the TPPA

---

[5] AWG's third objection asserts that the Magistrate Judge erred in finding a genuine dispute of material fact on the second element of Stone's TPPA claim, that he refused to participate in or remain silent about AWG's illegal activity. (Doc. No. 34 at 8–11). Specifically, AWG asserts that Stone's claim fails because he does not identify an "illegal activity" that AWG engaged in against state or federal law, nor does he properly establish that his actions advanced public policy concerns. See Haynes v. Formac Stables, Inc., 463 S.W.3d 34, 40–41 (Tenn. 2015). While the Court need not decide this issue, it notes that AWG's objection may have some merit given: (1) Stone does not "identify the unambiguous constitutional, statutory, or regulatory provision that was implicated here[,]" Konvalinka v. Fuller, 2019 WL 2323831, at *6 (Tenn. Ct. App. May 31, 2019); see also Davis v. Vanderbilt Univ. Med. Ctr., 2020 WL 4516094, at *7 (Tenn. Ct. App. Aug. 5, 2020) (finding plaintiff established this element by identifying portions of OSHA regulations that plaintiff thought defendant violated) and (2) there is no evidence in the record that Stone's complaints to TOSHA about the AWG forklifts were made on account of public safety concerns, rather than his own private interests about his work environment. (See Doc. No. 1-1; Doc. No. 20-1 at 244:16–245:1 (Stone testifying that he was not concerned about other people's safety at work when making TOSHA complaints)); see also Smith v. C.R. Bard, Inc., 730 F. Supp. 2d 783, 798–99 (M.D. Tenn. 2010) (for TPPA claim, plaintiff's complaint must "constitute efforts to bring to light an illegal" activity that "furthered an important public interest," rather than making a complaint to "advance his private interest").

9

presents trouble for Stone. Because the TPPA requires an "exclusive causal relationship," Amos, 622 F. App'x at 536, AWG "can rebut [Stone's] claim simply by 'articulat[ing] a non-retaliatory reason for [Stone's] discharge[,]'" Sourinho, 2021 WL 4735844, at *3 (quoting Williams v. City of Burns, 465 S.W.3d 96, 115 (Tenn. 2015)), in that "[a]ll that is necessary is for [AWG] to 'introduce admissible evidence showing that . . . even if retaliation was motivation for the discharge, there was at least one non-retaliatory reason as well.'" Id. (quoting Williams, 465 S.W.3d at 115).

Here, AWG has done just that. It has presented evidence to support at least two non-retaliatory motives for Stone's termination that are entirely distinct from Stone's complaints to TOSHA. First, AWG presents evidence that it terminated Stone because he left the automatic door separating the perishable and non-perishable items open, without permission, throughout his shift and into the next morning. (Doc. No. 19-1 ¶¶ 35–36). While the parties dispute whether Stone was given permission to do this, no one disputes that Stone did open the automatic door, or that AWG told Stone he was being fired for doing so. (See id.; see also Doc. No. 20-1 at 144 (AWG's memorandum explaining the decision to terminate Stone pertained to the automatic door being left open)). Second, the evidence demonstrates that AWG terminated Stone, in part, for his two prior disciplines pertaining to mishandling the forklift at work.[6] (Doc. No. 19-1 ¶¶ 35–36). Because Stone does not present any evidence negating that these two reasons constituted at least *part* of

---

[6] Stone also asserts that AWG "discharged him because of his race and age." (Doc. No. 18 ¶ 7). AWG contends that this serves as another basis to reject Stone's assertion that he can establish sole causation for his TPPA, given that his own account of events shows that his TOSHA complaints were not the sole basis for his termination. Given that AWG has presented other undisputed evidence indicating that Stone cannot establish sole causation here, the Court need to delve into the merits of this argument. The Court notes, however, that while Stone can plea alternative "sole" reasons for his termination, the Court is doubtful that he can do so at trial or summary judgment.

10

Case 3:24-cv-00812    Document 44    Filed 12/10/25    Page 10 of 13 PageID #: 616

AWG's decision to terminate him, he cannot satisfy the fourth element of his TPPA claim. See Guy, 79 S.W.3d at 537.

The R&R presents two main arguments for a different conclusion, both of which must be rejected. First, the Magistrate Judge asserts that AWG Senior Human Resources Manager Chris Kimbrough's ("Kimbrough") July 26, 2023 email regarding Stone's employment creates a genuine dispute of material fact on this issue for Stone. True, as the Magistrate Judge notes in her R&R, Kimbrough's email discussing Stone states that on July 21, 2023, Stone "threatened to call OSHA if maintenance did not make an unneeded change to his forklift that he requested." (Doc. No. 20-1 at 139). However, Kimbrough's email continues: "[t]he issue here is not that he would contact OSHA, but that he is threatening to lie and abuse a government agency for an issue that is not related to his safety[.]" (Id.). Kimbrough's email also provides further context for Stone's possible termination, including stating that:

- Kimbrough stating that he interviewed Stone about, among other things, "his attempt to . . . make modifications to his lift which are not required and are outside of manufacturer recommendations";

- Kimbrough noting that Stone "is currently on 2 finals as a result of equipment tampering of his own forklift in February and for violation/misuse of the battery charging policy"; and

- Kimbrough stating that "[t]ermination is requested by management based on the fact that [Stone] is already on 2 final warnings for equipment tampering & misuse and his repeated pattern of behavior indicates a willingness to use intimidation to influence safety decisions, as well as a disregard for the safety of others in the warehouse by not reporting perceived problems with equipment he refuses to use."

(Id.). In considering the entirety of Kimbrough's July 26, 2023 email and viewing it in Stone's favor, his own behavior surrounding the forklifts—including his two related prior disciplinary incidents—contributed to his termination. (See id.). Accordingly, this evidence does not alter the Court's conclusion that Stone's termination was not *solely* because of his TOSHA complaints.

11

Second, while the Magistrate Judge acknowledges there are other reasons for Stone's termination aside from his TOSHA complaints, she ultimately finds a genuine dispute of material fact because she questions whether Stone did, in fact, violate AWG's policies in a manner that would warrant termination. (Doc. No. 23 at 12 (stating that the "record contains conflicting evidence about AWG's workplace policies and practices and Stone's adherence to them")). Although this argument has some appeal, it ultimately puts the cart before the horse by engaging in the pretext analysis before addressing whether Stone can satisfy the sole causation standard the TPPA imposes in the *prima facie* case. (See id.). Given this, the Magistrate Judge erred by holding Stone to a "materially lower bar" than is required to satisfy his TPPA claim by rejecting the undisputed evidence that AWG's asserted multiple reasons for terminating Stone—leaving the automatic door open and being previously disciplined on two occasions—are not in dispute. See Sourinho, 2021 WL 4735844, at *4. Further, even when considering this argument, Stone still fails to show AWG's assertions that Stone violated its policies and procedures were pretextual and given the lack of evidence in the record showing AWG did not honestly belief that to be the case. See id. (employer's "honest belief" rule applies to TPPA claims, meaning that "so long as an employer honestly believes its proffered motive," the employee cannot show pretext merely by demonstrating that reason is incorrect).

Considering the foregoing, and viewing the record in Stone's favor, the undisputed evidence shows that AWG did not terminate Stone solely because of his complaints to TOSHA. See id.; see also Jones v. City of Union City, 2015 WL 9257815, at *12 (Tenn. Ct. App. Dec. 17, 2015) (holding that where defendant "submitted evidence that [p]laintiffs were discharged for at least one legitimate, non-pretextual reason [it] thereby affirmatively negated the final element of the Plaintiffs' TPPA claim-sole causation" making summary judgment appropriate); cf. Stockman

v. Oakcrest Dental Ctr., P.C., 480 F.3d 791, 802 (6th Cir. 2007) ("[a]n employee's opinion that he did not perform poorly is irrelevant to establishing pretext where the employer reasonably relied on specific facts before it indicating that the employer's performance was poor"). Because of this, Stone cannot establish the fourth element of his TPPA claim. Accordingly, AWG's second objection is well-taken, and the Court will reject the R&R and grant summary judgment in AWG's favor.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE